The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.




Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER |
| BUCYRUS COMMUNITY | ) |
| HOSPITALS, INC. | ) CASE NO. 10-61078 |
| | ) |
| Debtor. | ) ADV. NO. 10-6088 |
| | ) |
| | ) JUDGE RUSS KENDIG |
| UNITED BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LANCASTER POLLARD MORTGAGE | ) |
| COMPANY, et al., | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| Defendants. | ) |

On March 8, 2011, Lancaster Pollard Mortgage Company ("Lancaster") filed a motion to file first amended affirmative defenses, counterclaims, crossclaims and third-party complaint ("motion for leave"). On March 18, 2011, United Bank, N.A. ("United") filed a memorandum in opposition, and, on March 29, 2011, Lancaster replied. On April 6, 2011, the court entered an order stating that if neither party requested a hearing by April 18, 2011, the court would take the matter under advisement without further notice or hearing. No request for a hearing was filed, and the matter is now before the court.

United's motion to dismiss Lancaster's counterclaims, filed on December 28, 2010, is also pending before the court. For reasons discussed below, the court's resolution of the motion for leave is dependant on the court's resolution of United's motion to dismiss. Therefore, United's motion to dismiss is also before the court.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), (K) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

This adversary proceeding involves a priority contest between United and Lancaster in debtor's accounts receivable. On June 18, 2010, in debtor's main case, this court entered an order (I) authorizing debtor to obtain postpetition financing; (II) granting certain security interests and (III) granting adequate protection. The order provided that the first $524,000 borrowed from the postpetition lender would be placed in an escrow account pending the determination of the parties' priority in accounts receivable. (DIP Order at 4–5). The parties both assert that they are entitled to the escrow.

On August 31, 2010, United filed its first amended complaint. The complaint sets forth the following.

1. On August 25, 2003, debtor executed a promissory note in the amount of $500,000 in favor of United ("the Revolver Note"). (Complaint at ¶ 9).

2. On June 14, 2004, United filed a financing statement with the Ohio Secretary of State. The statement lists its collateral as "[a]ll Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds)." (Complaint at ¶¶ 10–11 ).

3. On May 29, 2007, in connection with a renewal of the Revolver Note, debtor executed a security agreement, which granted United a security interest in "[a]ll Accounts Receivables" among other collateral. (Complaint at ¶ 12 ).

4. On February 26, 2008, debtor executed a promissory note in favor of United in the principal amount of $250,000 (the "Term Note"). On the same day, debtor executed a security agreement granting United a security interest in all of debtor's "Chattel Paper and

2

Accounts." (Complaint at ¶¶ 13–14 ).

5. On June 30, 2008, in connection with a further renewal of the Revolver Note, debtor granted United a security interest in all of debtor's "Inventory, Chattel Paper, Accounts, Equipment and General Intangibles." (Complaint at ¶ 15 ).

6. On May 5, 2009, United filed a continuation of its June 14, 2004 financing statement. (Complaint at ¶ 16 ).

7. As of the filing of the complaint, debtor owes United a total of approximately $506,218.13. (Complaint at ¶ 28 ).

Count I of United's complaint argues that United's lien is valid, and Count II argues that United's lien is first in priority. United alleges that because its June 14, 2004 financing statement was filed before any other financing statement, United has a first priority interest in its collateral. (Complaint at ¶¶ 32–38).

On November 24, 2010, Lancaster filed its answer, counterclaim and third party complaint, which sets forth the following.

1. On July 21, 2005, debtor executed a mortgage note in favor of Lancaster in the original principal amount of $25,945,000. On the same day, debtor signed an open-end mortgage in favor of Lancaster. Also on the same day, debtor signed a security agreement granting Lancaster a security interest in substantially all of debtor's assets relating to the operation of Bucyrus Community Hospital, including accounts receivable. (Counterclaim at ¶¶ 8–10).

2. On July 22, 2005, Lancaster filed financing statements with the Crawford Country Recorder's Office and the Ohio Secretary of State for the purpose of perfecting its interest in debtor's accounts receivable. (Counterclaim at ¶ 13).

3. On July 21, 2005, debtor obtained an opinion letter from the law firm of Franz Ward, LLP ("Franz Ward"), which allegedly represents that Lancaster was entitled to first priority. (Counterclaim at ¶¶ 18–21).

4. Sometime shortly after the closing on July 21, 2005, Lancaster advanced approximately $3,200,000 to United for the purpose of paying off all loans owed by debtor to United. (Counterclaim at ¶ 26).

5. At no time did United file a termination statement with regard to its June 14, 2004 financing statement. (Counterclaim at ¶ 31).

Lancaster's eight-count counterclaim argues that United had an obligation to terminate

3

the June 14, 2004 financing statement but failed to do so. As such, Lancaster claims to be entitled to first priority in debtor's accounts receivable and damages under various legal theories. Lancaster's complaint alleges the following: Count I alleges that Lancaster's lien is valid; Count II alleges that Lancaster's lien is first in priority; Count III alleges that United's security interest is "unperfected or void *ab initio*;" Count IV alleges that United's lien should be equitably subrogated to Lancaster's lien; Count V alleges that United committed tortious interference with an existing contract; Count VI alleges that United's lien should be avoided as a fraudulent transfer; Count VII alleges unjust enrichment against United; Count VIII alleges that United breached an implied covenant of good faith and fair dealing; Count IX alleges that Bucyrus and Franz Ward made intentional or negligent misrepresentations; Count X alleges that Bucyrus and Franz Ward were negligent and Count XI alleges that Franz Ward was professionally negligent.

On December 28, 2010, United filed a motion to dismiss Lancaster's counterclaims against United. The motion to dismiss argues that Counts V, VI, VII, and VIII should be dismissed for lack of subject matter jurisdiction, that Count VI should be dismissed for lack of standing, that Count III is barred by the applicable statute of limitations and that Counts II, III, IV, VII and VIII fail to state claims. (Motion to Dismiss at 2). On February 11, 2011, Lancaster filed a memorandum in opposition, and, on February 25, 2011, United replied.

Less than two weeks after United's reply, Lancaster filed its motion for leave. Lancaster's proposed amended affirmative defenses, counterclaims, crossclaims and third party complaint ("amended counterclaim") is attached to the motion. The amended counterclaim explains the purpose of the United financing in connection with the June 14, 2004 financing statement. According to the amended counterclaim, the United loans were used to begin hospital renovation and to pay architectural fees prior to obtaining more permanent construction financing from Lancaster. (Amended Counterclaim at ¶ 28). The amended counterclaim also points out passages in debtor's mortgages with United which allegedly require United to terminate its financing statement upon payment of the underlying notes. (Amended Counterclaim at ¶¶ 33–37).

The amended counterclaim also contains additional counts. Amended Count II alleges that Untied's June 14, 2004 financing statement is unauthorized, amended Count IV adds a claim for equitable subordination, amended Count VI alleges that Lancaster has an equitable lien and amended Count X alleges that Lancaster is entitled to damages from United pursuant to Ohio Revised Code § 1309.625. Unlike the original counterclaim, the amended counterclaim does not contain a count alleging fraudulent transfer.

United's response to the motion for leave spans twenty pages. The first eight-and-one-half pages are devoted to the facts of the case. United then argues that Lancaster's motion does not adequately describe the proposed amendments. (Response at 9–11). The remainder of the response argues that the amendment would be futile because the amended counterclaim would not survive a motion to dismiss. Lancaster's reply is also nearly twenty pages long. It argues that the motion for leave gives sufficient notice of the proposed amendments because the proposed amendments are attached to the motion for leave as an exhibit. (Reply at 5–6). The reply also

4

argues that Lancaster's proposed amendments are not futile. (Reply at 7–19).

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 15(a)(2), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7015, states that "a party may amend its pleading only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." The Rule 15(a)(2) standard is lenient by design to encourage the resolution of claims on the merits. Foman v. Davis, 371 U.S. 178, 181–82 (1962). Leave should be freely given in the absence of a compelling reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id. at 182.

United makes two arguments in its objection to the motion for leave. First, United argues that Lancaster has failed to give sufficient notice of its intended amendments. (Objection at 9–10). This argument is meritless because Lancaster has attached its proposed amendments to the motion for leave. The case cited by United is not to the contrary because, in that case, the movant did not file a copy of the amended complaint, file a proper motion or indicate what the proposed amendments would be. Roskam Baking Co., Inc. v. Lanham Machine Co., 288 F.3d 895, 906 (6th Cir. 2002).

Second, United argues that the proposed amendment would be futile. (Objection at 11–20). When determining whether a motion for leave should be denied as futile, the court must determine whether the counterclaim, as amended, would survive a motion to dismiss. Konkol v. Diebold, Inc., 590 F.3d 391, 404 (6th Cir. 2009). As such, the court must rule on Lancaster's motion to dismiss in order to rule on the motion for leave. The court now considers whether each count of the amended counterclaim would survive a motion to dismiss.

### A. Count II of the Amended Counterclaim

Count II of the amended counterclaim alleges that United's June 14, 2004 financing statement became unauthorized as of July 21, 2005 and, therefore, United's liens are unperfected. Count II of the amended counterclaim is similar to Count III of the original counterclaim which alleges that "United's Security Interest is Unperfected or Void *Ab Initio*." United argues that amended Count II fails to state a claim and is thus futile.

Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, allows a party to seek dismissal if the opposing party's pleadings fail to state a claim on which relief can be granted. To avoid dismissal, a claim must be facially plausible. Ashcroft v. Iqbal, 129 S.Ct 1937, 1949 (2009) (citing Bell Atlantic v. Twombly, 500 U.S. 544, 570 (2007)). To survive a 12(b)(6) motion, the factual allegations in a complaint "must be enough to raise a right to relief above a speculative level." Twombly, 550

5

U.S. at 570.

The Court finds that amended Count II fails to state a claim because a financing statement which was authorized at the time of filing cannot later become unauthorized. Ohio Revised Code § 1309.509 states in relevant part:

> (A) A person *may file an initial financing statement*, amendment that adds collateral covered by a financing statement, or amendment that adds a debtor to a financing statement only if:
>
> > (1) The debtor *authorizes the filing* in an authenticated record or pursuant to division (B) or (C) of this section . . .
>
> (B) By authenticating or becoming bound as debtor by a security agreement, a debtor or new debtor *authorizes the filing of an initial financing statement*
> . . . .

(emphasis added). It is obvious from the text of section 1309.509 that the requirement of authorization is limited to the filing of the initial financing statement or a subsequent amendment. To hold otherwise—that is, to allow parties to nullify creditors' priority by retroactively wishing financing statements unauthorized—would create havoc with the secured lending system. In this case, the debtor signed security agreements. Thus, under section 1309.509(B) the financing statement was authorized when filed.

No case law was cited by either party as to the existence of such a cause of action on any similar set of facts.

Accordingly, the motion for leave is denied with regard to Count II of the amended counterclaim, and Count III of the original counterclaim is dismissed.

*B. Count IV of the Amended Counterclaim*

Count IV of the amended counterclaim alleges that United's liens should be equitably subordinated to Lancaster's liens. A claim for equitable subordination did not appear in the original counterclaim. United argues that amended Count IV fails to state a claim.

Pursuant to 11 U.S.C. § 510(c), the court has the authority to equitably subordinate a creditor's lien. Section 510(c) provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>
> > (1) under principles of equitable subordination, subordinate for

6

> purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
>
> (2) order that any lien securing such a subordinated claim be transferred to the estate.

To establish a basis for equitable subordination, a party must prove three elements to the preponderance of the evidence: (1) "[t]he claimant must have engaged in some type of inequitable conduct"; (2) "[t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant" and (3) "[e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act." In re Baker & Getty Fin. Servs., Inc., 974 F.2d 712, 717–18 (6th Cir. 1992). In the case of non-insiders, the court may only order equitable subordination if the inequitable conduct is egregious and proven with particularity. Id. at 718.

The court concludes that Count IV of the amended counterclaim is not futile. In the amended counterclaim, Lancaster states that the United loans were made in contemplation of more permanent construction financing from Lancaster, that all debts owing to United were paid off with the proceeds of loans from Lancaster and that United's mortgages contained provisions requiring United to terminate its financing statement upon payment of the associated loans. The court finds that these allegations form a basis for Lancaster's claim for equitable subordination that is at least plausible.

In its objection to the motion for leave, United disagrees with Lancaster's characterization of the facts. However, under the applicable legal standard, the court's review is restricted to the face of the amended counterclaim and its attachments. United's arguments are better suited for a motion for summary judgment.

Accordingly, Lancaster's motion for leave is granted with regard to amended Claim IV.

*C. Count V of the Amended Counterclaim*

Count V of the amended Counterclaim alleges that Lancaster should be equitably subrogated to United's lien position. Count V of the amended counterclaim is similar to Count IV of the original counterclaim.

The doctrine of equitable subrogation exists to prevent fraud and mistakes. Dept. of Taxation v. Jones, 399 N.E.2d 1215, 1217–18 (Ohio 1980). Where applicable, it allows a junior lien holder to step into the shoes of senior lien holder and collect the proceeds from a sale of collateral. Id. at 1216–17. Equitable subrogation is an exceptional remedy. "In order to entitle one to subrogation, his equity must be strong and his case clear." Id. at 1218.

7

The legal standard for imposition of equitable subrogation is similar to the legal standard for equitable subordination. Both doctrines result in a reversal of lien priorities, both doctrines exist to prevent fraud or mistake and both doctrines require a strong evidentiary showing. Therefore, for the reasons stated above, the court finds that amended Claim V is not futile.

United argues that the doctrine of equitable subrogation extends only to real estate and does not apply to personal property. United's argument overlooks Ohio Revised Code § 1301.103,[1] which provides that unless specifically displaced by a section of UCC, equitable remedies remain available. Furthermore, the Sixth Circuit Court of Appeals has rejected the argument that the UCC precludes courts from granting equitable liens, which suggests that equitable remedies affecting lien validity and priority remain available generally. Gen. Ins. Co. of Am. v. Lowery, 570 F.2d 120, 122 (6th Cir. 1978).

United cites a recent, unpublished Ohio Court of Appeals decision for the proposition that "when the UCC's provisions clearly apply to an alleged claim, the statutory provisions displace, and thus exclude, all common law claims." Peters Family Farm, Inc. v. The Sav. Bank, 2011 WL 497476, *3 (Ohio Ct. App. Jan. 28, 2011). But that case is easily distinguishable. In that case, the issue was not the availability of equitable remedies, but whether the loss allocation provisions of the UCC with regard to negotiable instruments supplant common law causes of action, such as negligence. Id. at *2–*3. The Sixth Circuit's decision in Lowery is much more on point.

Accordingly, the court grants Lancaster's motion for leave with regard to amended Count V.

*D. Count III of the Amended Counterclaim*

Count III of the amended counterclaim alleges that Lancaster has a first priority lien. Amended Count III is similar to Count II in the original counterclaim. The court has found that amended Counts IV and V state a claim. If Lancaster prevails on amended Count IV or V, Lancaster will have first priority lien. Therefore, Count III states a claim as well.

Accordingly, the motion for leave is granted with regard to Count III.

*E. Count VI of the Amended Counterclaim*

Count VI of the amended counterclaim alleges that Lancaster has an equitable lien in debtor's assets. A claim for equitable lien did not appear in the original counterclaim.

A court may impose an equitable lien in situations where parties intended, but failed, to

---

[1] Section 1301.103(B), which was amended on March 30, 2011, is substantially the same as Ohio Revised Code § 1301.03, which was repealed on the same day. Therefore, it does not matter which of these code sections applies to this adversary proceeding.

create a valid lien. *See* Landskroner v. Landskroner, 797 N.E.2d 1002, 1014 (Ohio App. 2003). Here, although the parties dispute priority, the parties do not seriously dispute that Lancaster has a valid lien. Therefore, Count VI is moot and the requested relief is not available.

Accordingly, the motion for leave with regard to amended Claim VI is denied.

*F. Counts VII, VIII, IX, and X of the Amended Counterclaim*

Count VII of the amended counterclaim, which is similar to Count V of the original counterclaim, alleges tortious interference with a contract against United. Count VIII of the amended counterclaim, which is similar to Count VII of the original counterclaim, alleges unjust enrichment against United. Count IX of the amended counterclaim, which is similar to Count VIII of the original counterclaim, alleges violations of an implied covenant of good faith and fair dealing against United. Count X of the amended counterclaim alleges damages against United pursuant to Ohio Revised Code § 1309.625. No similar claim appears in the original counterclaim.

These counts seek only money damages from a non-debtor party. As such, United argues that they do not effect the estate and therefore fall outside of the court's subject matter jurisdiction. The court agrees with United.

The court's subject matter jurisdiction over a case involving non-debtors is determined solely by 28 U.S.C. § 1334. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1140 (6th Cir. 1991). Section 1334 lists four types of matters over which the court has jurisdiction: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11 and (4) proceedings related to a case under title 11. The first matter, "cases under title 11," refers to the filing of the bankruptcy petition. Id. at 1141. The remaining three types of matters operate conjunctively to define the outer limit of bankruptcy jurisdiction. "Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." Id.

The Sixth Circuit has adopted the following test to determine whether a matter is "related to" the bankruptcy:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

9

Id. at 1142 (quoting In re Pacor, Inc., 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original).

In this case, Lancaster's amended counterclaim does not suggest any way in which these counts could conceivably have an effect on the estate. The court notes that certain language in amended Counts VII, VIII, IX, and X suggests that damages should be paid out of the escrow created by the court's June 18, 2010 order. However, the escrow was created as a carve-out for compensating the first priority lien holder for the value of its lien, not for paying damage awards.

Accordingly, leave to amend is denied with regard to amended Counts VII, VIII, IX, and X, and Lancaster's claims for tortious interference with an existing contract, unjust enrichment, and implied covenant of good faith and fair dealing are dismissed without prejudice for lack of subject matter jurisdiction.

### G. Counts I, XI, XII and XIII of the Amended Counterclaim

No objection was filed regarding Counts I, XI, XII or XIII of the amended counterclaim. Accordingly, leave to file amended Counts I, XI, XII and XIII is granted.

An order accompanies this opinion.

\# \# \#

**Service List:**

Polly J Harris
41 S High St
Columbus, OH 43215

Bonnie Yvette Hochman Rothell
1850 M Street, NW
Suite 400
Washington, DC 20036

Deanna M. Remmes
Krooth & Altman LLP
1850 M Street
Suite 400
Washington, DC 20036

Matthew R. Rechner
McDonald Hopkins, LLC
600 Superior Ave., East, Suite 2100
Cleveland, OH 44114

Paul W Linehan
McDonald Hopkins LLC
600 Superior Ave E
Suite 2100
Cleveland, OH 44114-2653

George S. Coakley
Reminger & Reminger Co., L.P.A.
101 Prospect Ave. West
1400 Midland Bldg.
Cleveland, OH 44115